# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Barbara Davis, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 9:11-1863-RMG |
| vs. ) | |
| ) | |
| Carolyn W. Colvin, Acting Commissioner ) | |
| of Social Security, ) | **ORDER** |
| ) | |
| Defendant. ) | |
| _____ ) | |

Plaintiff has brought this action pursuant to 42 U.S.C. § 405(g) seeking judicial review of the final decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). In accord with 28 U.S.C. § 636(b) and Local Civil Rule 73.02 DSC, this matter was referred to a United States Magistrate Judge for pre-trial handling. The Magistrate Judge issued a Report and Recommendation on March 19, 2014, recommending that the Commissioner's decision be affirmed. (Dkt. No. 28). No party filed objections to the Report and Recommendation.

The Court, after reviewing the decision of the Administrative Law Judge ("ALJ") and the record in this matter, issued a text order directing the Commissioner to address the following issues: (1) the lack of clarity regarding the period applicable to the opinion of Plaintiff's long-treating specialist physician, Dr. Wendy Lee, that Plaintiff was limited to sedentary work; (2) the failure of the ALJ to address and weigh the findings of Plaintiff's physical therapist that Plaintiff was unable to lift more than ten pounds or stand for longer than thirty minutes; and (3) the failure of the ALJ to address and weigh the finding of an examining consulting physician, Dr. Scott

Korn, D.O., that Plaintiff was "unable to perform any physical maneuvers," at least in part, because she had "poor lower extremity strength." (Dkt. No. 32). The Commissioner then filed a supplemental memorandum addressing each of these issues. (Dkt. No. 34). As more fully set forth below, the decision of the Commissioner is reversed and remanded for further action consistent with this order.

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. The Act provides that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than preponderance." *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of the factual circumstances that substitutes the Court's findings of fact for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is a limited one, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the

administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 519 (4th Cir. 1987).

The Commissioner, in passing upon an application for disability benefits, is required to undertake a five-step sequential process. At Step One, the Commissioner must determine whether the applicant is engaged in substantial gainful work. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful employment, the Commissioner proceeds to Step Two, which involves a determination whether the claimant has any "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). If the claimant has one or more severe impairments, the Commissioner proceeds to Step Three, which involves a determination whether any impairment of the claimant satisfies any one of a designated list of impairments that would automatically render the claimant disabled. *Id.* § 404.1520(a)(4)(iii). Further, even if a claimant's condition does not meet all of the requirements of a listing, a claimant may be declared disabled at Step Three if she is able to show that another impairment or combination of impairments are the medical equivalent of the listed impairment. 42 U.S.C. § 423(c)(2)(b); *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); 20 C.F.R. § 404.1526(b).

If the claimant does not have a listed impairment, the Commissioner must proceed to Step Four, which involves an assessment of the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4)(iv). This requires assessment of the claimant's ability "to meet the physical, mental, sensory, and other requirements of work." *Id.* § 404.1545(a)(4). In determining the claimant's RFC, the Commissioner "must first identify the individual's functional limitations or restrictions" and provide a narrative "describing how the evidence

supports each conclusion, citing specific medical facts . . . and nonmedical evidence." SSR 96-8P, 61 Fed. Reg. 34474, 34475, 34478 (July 2, 1996).

Once the claimant's RFC is determined, the Commissioner must assess whether the claimant can do his past relevant work. 20 C.F.R. §§ 404.1520(4)(iv), 1545(a)(5)(i). If the claimant, notwithstanding the RFC determination, can still perform his past relevant work, he is deemed not to be disabled. If the claimant cannot perform his past relevant work, the Commissioner then proceeds to Step Five to determine if there is other available work in the national economy he can perform in light of the RFC determination. *Id.* § 404.1520(a)(4)(v).

Under the regulations of the Social Security Administration, the Commissioner is obligated to consider all medical evidence and the opinions of medical sources, including treating physicians. *Id.* § 404.1545. The regulation, known as the "Treating Physician Rule," imposes a duty on the Commissioner to "evaluate every medical opinion we receive." *Id.* § 404.1527(c). The Commissioner "[g]enerally . . . give[s] more weight to opinions from . . . treating sources" based on the view that "these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations." *Id.* § 404.1527(c)(2). Further, the Commissioner "[g]enerally . . . give[s] more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." *Id.* § 404.1527(c)(1).

Under some circumstances, the opinions of the treating physicians are to be accorded controlling weight. Even where the opinions of the treating physicians of the claimant are not

accorded controlling weight, the Commissioner is obligated to weigh those opinions in light of a broad range of specifically identified factors, including the examining relationship, the nature and extent of the treatment relationship, supportability of the opinions in the medical record, consistency, and whether the treating physician is a specialist. *Id.* §§ 404.1527(c)(1)-(5). The Commissioner is obligated to weigh the findings and opinions of treating physicians and to give "good reasons" in the written decision for the weight given to a treating source's opinions. SSR 96-2P, 61 Fed. Reg. 34490, 34492 (July 2, 1996).

## Factual Background

This appeal arises out of an extraordinarily protracted Social Security administrative appeal process that began with Plaintiff's application for DIB on February 4, 2003. Over the ensuing eleven years, Plaintiff's application has twice been remanded to the ALJ because the agency lost the audio recording of the administrative hearing and Plaintiff has participated in four separate administrative hearings in 2004, 2007, 2010, and 2012. Plaintiff has asserted that a combination of physical and mental disorders, including degenerative disc disease, fibromyalgia, chronic obstructive pulmonary disease, and anxiety have rendered her disabled under the Social Security Act. In the last of the administrative decisions, issued on June 14, 2012, the ALJ concluded that Plaintiff was not disabled because she retained during the relevant period the RFC to perform light work. Transcript of Record ("TR") 26-28. Plaintiff challenges this conclusion by the ALJ and argues that during the relevant period she retained only the capacity to perform sedentary work, which under Social Security regulations would render her disabled since she was over fifty years of age at the time of her application. 20 C.F.R. Pt. 404, Subpt. P, App. 2 §§ 201(g), 201.12.

The factual presentation of this dispute is, to say the least, unusual. Plaintiff alleges that she ceased work because of her alleged disability on September 10, 2002, just twenty days before her last date insured of September 30, 2002. Thus, it is her burden to demonstrate that she was capable of performing no more than sedentary-level work during this period of September 10-30, 2002. Further, in the course of this protracted administrative process, Plaintiff filed an application for Supplemental Security Income ("SSI") benefits on August 21, 2008, and was subsequently determined to be disabled since that date. Tr. 91-92. Thus, Plaintiff is currently a SSI recipient based on her condition on and after August 21, 2008, and the parties are before this Court disputing the denial of DIB benefits based on her condition during the period September 10-30, 2002.

The record demonstrates that Plaintiff, immediately prior to her alleged period of disability, performed work as a housekeeper, primarily cleaning condos and houses at the beach. Beginning in October 2000, Plaintiff was under the care of Dr. Wendy Lee, a rheumatologist, for a variety of conditions including back pain, hip pain, radiculopathy, and hand pain. Tr. 655. Dr. Lee documented that Plaintiff had a history of prior spinal compression fractures and experienced difficulties with anxiety and depression. Tr. 658, 662, 665, 697. Over the several years preceding the critical period of September 10-30, 2002, Dr. Lee noted that Plaintiff's pain and mental condition would range from significantly impaired to relatively well controlled and she was able during this period to continue working as a housekeeper notwithstanding her physical limitations. Tr. 655-69.

However, when Plaintiff presented to Dr. Lee for her appointment on October 18, 2002—the first office visit after the expiration of her last date insured of September 30,

2002—Plaintiff's condition had obviously worsened. First, Dr. Lee diagnosed her with "diffuse migratory pain" and noted that she "[s]eemed to have increase of pain." Tr. 672. Second, Plaintiff reported that she had been "[u]nable to . . . clean condos and beach houses during the past few months" and had "quit work" because of "a lot of pain." Tr. 670, 672. Third, for the first time, Plaintiff was documented informing Dr. Lee that she wanted to apply for disability because of her condition. Tr. 672. Dr. Lee's diagnoses in the October 18, 2002 office note included bilateral carpal tunnel syndrome, compression fractures to T12 and L1, moderate degenerative disc disease of the lumbar spine, fibromyalgia, and anxiety. *Id.* The record indicates that since Plaintiff discontinued her housekeeper work on September 10, 2002, she has never returned to gainful employment. Tr. 24.

Because of Plaintiff's worsening symptoms, Dr. Lee referred her to physical therapy for treatment. Plaintiff discontinued the therapy after five weeks because she complained it increased her pain. Tr. 673. The physical therapist documented that at the time of the discontinuance of the physical therapy, on December 19, 2002, Plaintiff had been unable to achieve the goals of lifting five to ten pounds or to stand for thirty minutes. Tr. 712. Both of these findings would be inconsistent with someone capable of performing light work.

Plaintiff underwent a consultative examination conducted by Dr. Scott Korn, D.O., on May 13, 2003, as part of her Social Security disability application. Dr. Korn diagnosed Plaintiff with fibromyalgia, carpal tunnel syndrome, and compression fractures and documented pain with palpation of the claimant's spine and limited range of motion in the spine. Tr. 730. Dr. Korn also documented abnormalities in Plaintiff's lower extremity strength, rating her only with a three out of five. He concluded that Plaintiff "would be unable to perform any physical

-7-

maneuvers as she is slightly unsteady, has limited range of motion, and poor lower extremity strength." Tr. 730-31. Dr. Korn offered no opinion as to the Plaintiff's RFC.

Plaintiff's record was also reviewed by two non-examining, non-treating physicians, one on June 6, 2003, and the other on October 8, 2003. Both concluded that Plaintiff could lift ten pounds frequently and twenty pounds occasionally and could stand or walk six hours in an eight-hour day. Tr. 598, 628. The identity of the two chart reviewers is not discernible to the Court from a careful review of their signatures, and the RFC forms they completed contain little supporting evidence beyond a few cryptic notes. Tr. 597-603, 628-35. In particular, there is no evidence cited supporting the reviewers' lifting and standing opinions and no reference is made to the finding of the physical therapist that as of December 19, 2002, Plaintiff could not lift ten pounds or stand for thirty minutes. Tr. 712.

Dr. Lee completed a medical opinion form on March 9, 2004, regarding Plaintiff's functional capacity for work. She concluded that Plaintiff's condition limited her to sedentary work only, which included lifting only up to ten pounds occasionally, sitting most of the time, and standing or walking only for brief periods of time. Tr. 692. Dr. Lee, who had then been treating Plaintiff for three-and-one-half years, did not specify the period in which her limitation to sedentary work applied. In particular, Dr. Lee did not state whether her opinion regarding Plaintiff's limitation to only sedentary work included the period of September 10-30, 2002.

The record contains testimony from Plaintiff from her 2004 and 2012 administrative hearings. She testified that she had experienced during the relevant period severe pain in her back, hip, and down her leg that was described as "knife stabbing" and "throbbing" and she was unable to stand longer than approximately five minutes. Tr. 1304, 1306. Plaintiff testified that

-8-

her housekeeper duties required her to climb stairs and carry cleaning materials and a vacuum and that by September 10, 2002, she could no longer perform the duties of a housekeeper. Tr. 1342-43, 1346, 1350.

Following the administrative hearing on April 19, 2012, the ALJ found that Plaintiff had at the relevant period of September 10-30, 2002, severe impairments that included degenerative disc disease, fibromyalgia, chronic obstructive pulmonary disease, and anxiety. Tr. 24. The ALJ found that Plaintiff retained the RFC to perform light work, including lifting ten pounds regularly and up to twenty pounds occasionally and walking or standing six hours in an eight-hour day. Tr. 26. The ALJ further found that Plaintiff was capable during the relevant period to return to her former work as a housekeeper. Tr. 28-29. In making those findings and conclusions, the ALJ noted that as of the Plaintiff's date last insured of September 30, 2002, "none of [Plaintiff's] treating or examining physicians offered any medical opinion with regard to her functional limitations." Tr. 27.

## Discussion

Despite the voluminous administrative record, totaling more than 1,300 pages, and the protracted nature of the administrative processing of this claim, exceeding a decade, the factual issues surrounding Plaintiff's disability claim are rather simple and straightforward. There is no dispute that as of August 21, 2008, Plaintiff was disabled under the Social Security Act because of conditions for which she had received treatment since 2000. The ALJ recognizes that Plaintiff had significant impairments during the relevant period, September 10-30, 2002, that limited her RFC to light work. There is also no question that since September 10, 2002, to the present, Plaintiff has not been engaged in any gainful employment because, according to her, the pain she

experienced from her combination of degenerative disc disease, fibromyalgia, and other conditions rendered her incapable of performing her former work as a housekeeper. What separates the positions of Plaintiff and Defendant is whether the claimant's undisputed severe physical impairments limited her during the relevant period to light or sedentary work.

In light of the critical nature of the RFC determination in this matter, it is troubling that the ALJ's decision fails to appropriately address potentially critical evidence favorable to Plaintiff. Each of the deficiencies set forth below provides a separate and independent basis for reversal of the Commissioner's decision.

### A.     Failure to determine the period applicable to Dr. Lee's opinion that Plaintiff was limited to sedentary work

Under the Treating Physician Rule, 20 C.F.R. § 404.1527, the opinions of treating specialist physicians are given a high level of deference. Dr. Lee, as Plaintiff's long-serving treating rhematologist, would certainly fall into such a category. She treated Plaintiff continuously since October 2000 and completed a questionnaire in March 2004 indicating that Plaintiff was limited to sedentary work. Tr. 692. What is not clear to this Court is the period applicable to this opinion. This is not an academic question because Dr. Lee's office notes of October 18, 2002, which represented the first medical evaluation after Plaintiff ceased working on September 10, 2002, describe a material increase in Plaintiff's pain so great that she had to quit work and was making inquiries about disability. Tr. 670, 672. Further, the ALJ had noted that allegedly no treating physician had offered an opinion about Plaintiff's RFC covering the

relevant period. Tr. 27.¹

Although a claimant for DIB must establish the presence of a disability prior to her date last insured, medical evidence produced after the date last insured is generally admissible and relevant if such evidence "permits an inference of linkage with the claimant's pre- [date last insured] condition." *Bird v. Comm'r of Soc. Sec.*, 699 F.3d 337, 341 (4th Cir. 2012). Indeed, the Fourth Circuit recently noted in *Bird* that often the "most cogent proof" of a claimant's pre-date last insured disability comes from retrospective consideration of subsequent medical records. *Id.* (citing *Moore v. Finch*, 418 F.2d 1224, 1226 (4th Cir. 1969)). *Bird* further provides that the subsequent medical evidence need not include a retrospective diagnosis so long as the treatment related to the claimant's "history of impairments." *Id.* Additionally, *Bird* holds that such retrospective medical evidence "is especially appropriate when corroborated by lay evidence," including testimony of a claimant about his pre-date last insured condition. *Id.* at 342.

A claimant in a Social Security disability claim has the duty to furnish all relevant medical evidence and to carry the burden of proving that he or she is disabled. 20 C.F.R. § 404.1512(a). Congress, however, imposes upon the Commissioner to "make every reasonable effort" to obtain "all medical evidence" from treating physicians. 42 U.S.C. § 423(d)(5)(B). This requires the ALJ to "develop a full and fair record" and to correct any significant gaps or "deficiencies" in the record. *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991); *Hannah-Walker v. Colvin*, No. 2:12-cv-61-PRC, 2013 WL 5320664, at *15 (N.D. Ind. Sept. 23, 2013);

---

¹ The Commissioner argues that Dr. Lee's opinion "unambiguously concerned Plaintiff's condition in March of 2004." (Dkt. No. 34 at 1). While it is clear to the Court that Dr. Lee's opinion certainly includes the period March 2004, what remains unclear is whether that opinion extends to the period of September 10 - 30, 2002, which is potentially critical to the determination of Plaintiff's eligibility for Social Security disability benefits under this claim.

*Rivera v. Astrue*, No. 10 CV 4324(RJD), 2012 WL 3614323, at *12 (E.D.N.Y. Aug. 21, 2012); *Washington v. Astrue*, C/A No. 3:08-cv-2631-DCN, 2010 WL 3023048, at *3 (D.S.C. July 29, 2010). This affirmative duty exists where "such evidence is necessary to a fair determination of the claim." *Milton v. Schweiker*, 669 F.2d 554, 556 (8th Cir. 1982); *Tucker v. Bowen*, No. CV-87-3487, 1989 WL 10564, at *4 (E.D.N.Y. Feb. 2, 1989). While the ALJ's duty to complete the record is heightened when the claimant is *pro se*, the "duty exists even when the claimant is represented by counsel. *Rivera*, 2012 WL 3614323, at *12.

This Court has carefully reviewed the entire record and cannot determine the time frame applicable to Dr. Lee's opinion that Plaintiff was limited to sedentary work. This is a potentially important issue and the record contains a significant gap or deficiency that can easily be resolved by recontacting Dr. Lee and asking her to clarify the time frame of her opinion. Reversal and remand are necessary to address this potentially significant and missing piece of evidence. Further, a regulation in effect at the time Plaintiff applied for disability required that where information from a treating physician "is inadequate for us to determine whether you are disabled . . . [w]e will first recontact your treating physician . . . to determine whether additional information is readily available." 20 C.F.F. § 404.1512(e)(1).[2]

On remand, the fact finder is directed to recontact Dr. Lee and to ask her to provide a time frame applicable to her opinion that Plaintiff was limited to sedentary work. In particular, the

---

[2] This regulation was modified on February 23, 2012, and the requirement of the adjudicator to contact the treating physician was removed. 77 Fed. Reg. 10651 (Feb. 23, 2012). This modification occurred after Plaintiff's claim was filed and the regulation remains binding on the Commissioner. Further, the Commissioner made clear in seeking this regulatory change that "we would still expect adjudicators to recontact a person's medical source" when "recontact is the most effective and efficient way to resolve an inconsistency or insufficiency." *Id.*

ALJ should determine if it is Dr. Lee's opinion that Plaintiff was limited to sedentary work from the time she ceased work on September 10, 2002, through the end of the period of date last insured of September 30, 2002.

### B. Failure of the ALJ to reference and weigh the finding of the physical therapist of December 19, 2002, that Plaintiff was unable to lift more than ten pounds or stand for more than thirty minutes

When the Commissioner is attempting to determine whether a claimant is limited to sedentary or light work, critical factors include the claimant's capacity to lift occasionally more than ten pounds and stand or walk six hours in an eight-hour day. If a claimant is limited to lifting no more than ten pounds or cannot stand approximately six hours in a normal work shift, he or she has a RFC only for sedentary work. SSR 83-10, 1983 WL 31251, at *5 (1983).

Plaintiff testified that she was limited to only brief standing and walking during the relevant period and was unable to lift the materials she needed to perform her housekeeping duties. Tr. 1342-43, 1346, 1350. This testimony was corroborated by a report from Plaintiff's physical therapist of December 19, 2002, indicating that she was unable to lift ten pounds or stand for thirty minutes. Tr. 712. This report was not referenced in the ALJ's decision. The ALJ did, however, mention the findings of the two non-examining chart reviewers, who opined that Plaintiff could lift twenty pounds occasionally and stand for six hours in an eight-hour day but offered no evidence to support such findings. Tr. 598, 628.

The Commissioner pledges to make the RFC determination "based on all relevant evidence in your case record." 20 C.F.R. § 404.1545(a)(1). This includes evidence of "other sources" (defined as "medical sources who are not 'acceptable medical sources'"), including "therapists," because the evidence from such "other sources" may be based on "special

-13-

knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03P, 2006 WL 2329939, at *2 (Aug. 9, 2006). Further, as noted above, it is well settled that evidence of a claimant's condition after the period of the date last insured may be considered retrospectively where there is a linkage between the claimant's then existing condition and her condition during the period last insured. *Bird v. Comm'r of Soc. Sec.*, 699 F.3d at 340-41. In this situation, such a linkage obviously exists. Plaintiff reported to her primary treating doctor on October 18, 2002, that she had been forced to cease work because of her increase in pain. Tr. 670, 672. Dr. Lee then referred her to physical therapy to address this medical condition. At the completion of Plaintiff's physical therapy on December 19, 2002, the physical therapist documented Plaintiff's status regarding limitations on lifting and standing. Tr. 712.

Under these circumstances, it was error for the ALJ not to address and weigh these findings of the physical therapist closely contemporaneous to the date last insured and corroborative of Plaintiff's hearing testimony about her limitations with lifting and standing. It is particularly inappropriate to ignore the findings of the physical therapist, who actually provided services and treatment to Plaintiff, while relying on opinions of non-examining chart reviewers who provided no evidentiary basis to support their opinions that Plaintiff could lift up to twenty pounds and stand for six hours in an eight-hour day. On remand, the ALJ should be mindful that the opinions of non-examining state agency reviewers should be evaluated under the standards of the Treating Physician Rule and the supporting evidence they provide for their opinions. 20 C.F.R. § 404.1527(e)(1)(ii), (2)(ii).

C.   **The ALJ's failure to address Dr. Korn's opinion that Plaintiff was "unable to perform any physical maneuvers" because of her "poor lower extremity strength"**

The ALJ claims to have given "considerable weight" to the findings of the consultive examiner, Dr. Korn, and referenced various findings, including an alleged finding that Plaintiff had "slightly reduced" lower extremity strength. Tr. 27-28. In reviewing Dr. Korn's full report, it is clear that the ALJ failed to address the doctor's concluding impression that the claimant was "unable to perform any physical maneuvers as she is slightly unsteady, has limited range of motion, and poor lower extremity strength." Tr. 730-31. This conclusion was based on various findings of Dr. Korn that included: (1) the patient had a "slow and slightly unbalanced gait"; (2) strength was 3/5 in the lower extremities; (3) the claimant had "[p]oor fine motor dexterity and poor rapid alternating movement"; (4) patient was "unable to heel walk, toe walk, or tandem walk"; (5) plaintiff had limited range of motion in her spine; and (6) plaintiff had "pain with palpation throughout the back." Tr. 729-30.

These findings of Dr. Korn are of obvious potential significance in the determination regarding whether she retained during the relevant period the RFC for light work. Indeed, the Vocational Expert acknowledged in the 2004 administrative hearing that if Plaintiff was unable to "perform any physical maneuvers," as found by Dr. Korn, this "would preclude any jobs I could ever suggest." Tr. 1328. Dr. Korn's finding of "poor lower extremity strength," which went unmentioned in the ALJ's decision[3], tends to corroborate the testimony of Plaintiff, the physical therapist, and Dr. Lee that Plaintiff had a very limited capacity to stand or walk. On

---

[3] Instead, the ALJ characterized Dr. Korn's findings as revealing only "slightly reduced strength . . . in her lower extremities." Tr. 27-28.

remand, Dr. Korn's full report, rather than "cherry picked" excerpts, should be considered and weighed in evaluating Plaintiff's RFC.

## Conclusion

The decision of the Commissioner is hereby REVERSED pursuant to Sentence Four of 42 U.S.C. § 405(g) and REMANDED to the Commissioner for further action consistent with this Order. In light of the protracted nature of these administrative proceedings, the Commissioner is directed to schedule a hearing in this matter and to render an administrative decision within ninety days of this order.

AND IT IS SO ORDERED.

_____
Richard Mark Gergel
United States District Judge

Charleston, South Carolina
April 22, 2014